**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case No.: 0:19-cv-60205-DIMITROULEAS/Snow

GINA BELLENGER, on behalf of
herself and all others similarly situated,

        Plaintiff,

v.

ACCOUNTS RECEIVABLE MANAGEMENT, INC.,

        Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER [DOC. 31]**

Plaintiff Gina Bellenger ("Plaintiff"), by her respective attorneys, hereby submits her response in opposition to the Motion for Protective Order (Doc. 21, hereinafter the "Motion") filed by Defendant Accounts Receivable Management, Inc. ("ARM" or "Defendant").

**I.      INTRODUCTION**

Defendant's Motion is a classic example of how a litigant wastes the Court's and the parties' resources and efforts and ignores the interests of judicial economy. The Motion raises the *same* arguments and issues already at issue in Plaintiff's fully briefed and now pending Motion to Compel Relevant Discovery. *See* Docs. 21, 26-27. Nevertheless, in an attempt to get the "last word" in, Defendant filed this duplicative Motion seeking to relitigate the same issues thereby requiring this Court and the parties to undergo twice the work to get the same issues resolved. No matter how many times the parties brief these issues, however, Defendant does not—cannot—proffer any sufficient basis to deny Plaintiff relevant discovery that is "standard practice" in actions under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

**II.     BACKGROUND**

This class action lawsuit arises under the TCPA. Plaintiff alleges Defendant bombards consumers, including herself, with "wrong number" debt collection calls. *See* Dkt. 1, *generally*. During the course of discovery, Plaintiff requested that Defendant produce a (i) Call List, i.e., the telephone numbers, names, and addresses of each person called during the Class Period; (ii) Call Logs, i.e., the date(s) and time(s) of each telephone number called; and (iii) Call Data, i.e., related account information about each person called during the Class Period from Defendant's customer databases. *See* Doc. 31 at Exhibit 1. After a period of meeting and conferring regarding the aforesaid requests, Defendant blanketly refused to produce any of the relevant class-wide data. As a result, Plaintiff filed a motion to compel Defendant to produce the relevant discovery. *See* Doc.

1

21. After that Motion was filed, Defendant conferred with Plaintiff about a potential 'compromise' regarding the contested discovery. *See* Doc. 27 at 1-3. The compromise was rejected by Plaintiff's counsel because it was clearly insufficient; namely, Defendant offered to produce limited discovery that Defendant acknowledged it would thereafter attack as unreliable. *See id*. As a result, Plaintiff moved forward with her motion to compel, which is now fully-briefed and pending before this Court. *See* Docs. 21, 26-26.

After briefing on the motion to compel was completed, Defendant's counsel contacted Plaintiff's counsel to advise Defendant would also file this Motion. Plaintiff's counsel objected on the grounds that the Motion was duplicative, inefficient, and waste of the parties' and the Court's resources because the issues were already in front of the Court. Nevertheless, Defendant ignored Plaintiff's objections and proceeded to file this Motion.

**III.     ARGUMENT**

**A.     Defendant's Motion was Filed in Violation of Fed. R. Civ. P. 1.**

As an initial matter, Defendant's Motion should be denied because it was filed in violation of Federal Rule of Civil Procedure 1. Rule 1 of the Federal Rules of Civil Procedure dictates that the parties utilize their efforts "to secure the just, speedy, and inexpensive determination" of every action. Defendant's Motion ignores Rule 1 in its entirety. *See* Fed. R. Civ. P. 1. The Motion is duplicative of Plaintiff's pending motion to compel and therefore only serves to delay the proceedings and waste the parties' and the court's resources by requiring double the amount of work to get a ruling on the same issues. The Motion should be denied for this reason alone.

**B.     The Discovery from Which Defendant Seeks 'Protection' is Relevant to Plaintiff's Burdens on Class Certification.**

As an initial matter, production of a Call List and Call Data—from which Defendant seeks protection—is a standard practice in TCPA class litigation. *See, e.g.*, *Ossola v. Am. Express Co.*,

2

2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."). "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013). Such information is relevant because it speaks to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, ascertainability, commonality, and predominance. For these reasons, production of a call list and call data is routinely ordered by courts across the country. *See, e.g., Gilman*, No. C11-0806-JCC, Order, Dkt. No. 67, at p. 4 ("The Court concludes that Plaintiffs are entitled to the requested discovery."); *O'Shea v. Am. Solar Sol., Inc.,* No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016*)* (granting plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) (compelling production of call list).[1] As discussed below, the Call List and Call Data in ARM's possession goes directly to the elements necessary to certify a class.

---

[1] *See also Gossett v. CMRE Fin. Servs*., Case No. 15cv803 MMA (NLS), 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) (granting a motion to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc*., 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (Nolan, J.) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp*., 2013 WL 5348377, at *2 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality").*Mbazomo v. ETourandTravel, Inc*., No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (call logs and dialing lists relevant to numerosity and commonality); *Ossola*, 2015 WL 5158712, at *7 ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *Gossett v. CMRE Fin. Servs*., 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (same); *Thrasher v CMRE Financial Services, Inc.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb v. Healthcare Revenue Recovery Grp. LLC*, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (same).

3

### 1. The Call List is Relevant to Ascertainability.

First, the Call List is relevant to determine whether the class is ascertainable. A class must be defined objectively so that it is possible for class members to identify themselves. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) ("the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member"); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1325 (W.D. Wash. 2015) (same). Put simply, a class is considered to be ascertainable so long as it is defined by objective criteria. *Agne*, 286 F.R.D. at 566; *Dunakin*, 99 F. Supp. 3d at 1325.

While Plaintiff has objectively defined the class to include persons to whom Defendant placed a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Defendant's calls, ARM refuses to provide basic and relevant information in its possession that will allow Plaintiff to ascertain who is in the proposed class.

Plaintiff therefore seeks that information in order to meet her burden on class certification with regard to ascertainability. A call list is routinely produced in class discovery for this very reason. *See, e.g.*, *Stemple v. QC Holdings, Inc*., 2013 U.S. Dist. LEXIS 99582 at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertainability of potential class members.'") (citation omitted); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 U.S. Dist. LEXIS 110162 at *5 (S.D. Cal. June 12, 2014) (in a TCPA case, "the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *City Select Auto Sales Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434, 440-41 (3d Cir. 2017) (class-wide call data relevant to ascertainability); *Donnelly,* 263 F.R.D. at 504 ("The court has already concluded that discovery aimed at ascertaining a potential

class list is proper."); *Legg v. American Eagle Outfitters, Inc.*, 14-cv-61058, Order, Dkt. 69 (S.D. Fla. Nov. 21, 2014) (ordering production of call data because it is "relevant discovery on whether a class is ascertainable and to class factors such as numerosity, typicality and commonality.").

### 2. The Call List is Relevant to Numerosity.

Similarly, the Call List supports a showing of numerosity. The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Only ARM has information that will allow Plaintiff to determine how many calls were placed to cell phones during the class period in violation of the TCPA. ARM has not explained why producing this information would be too burdensome—nor has ARM offered to stipulate to numerosity—and Plaintiff is entitled to it in order to establish the size of the putative class. *See, e.g., Gilman*, No. C11-0806-JCC, Order, Dkt. No. 67, at p.4 (call list relevant to numerosity); *Cahill*, 2018 WL 1791910, at *4 (same); *Stemple*, 2013 U.S. Dist. LEXIS 99582 at *6 (same); *Whiteamire,* 2013 WL 5348377, at *3 (same) *Legg*, 14-cv-61058, Order, Dkt. 69 (same); *Gaines*, 2014 U.S. Dist. LEXIS 110162 at *5 (same); *Doherty v. Comenity Capital Bank & Comenity Bank*, 2017 WL 1885677, at *4 (S.D. Cal. 2017) (same).

### 3. The Call List is Relevant to Commonality and Predominance.

Additionally, the Call List is relevant to both commonality and predominance. The commonality requirement is met if at least one legal or factual question is common to every member of the class. Fed. R. Civ. P. 23(a)(2). The predominance analysis focuses on whether the legal or factual issues to be resolved on a class-wide basis are more important than those that could only be resolved on an individual basis. Fed. R. Civ. P. 23(b)(3); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the common question to which the Call List plainly relates is whether the class members were all called ***on cellular phones*** by an autodialer –

5

an element of Plaintiff's TCPA claims. *See, e.g., Knutson*, 2013 WL 11070939, at *1-2 ("The common question is thus, 'were we all called *on our cellular telephones*, by an autodialer or artificial or prerecorded voice, on behalf of [Defendants]. . . .'") (emphasis in original); *Doherty*, 2017 WL 1885677, at *4 ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality."); *Whiteamire,* 2013 WL 5348377, at *3 (call list relevant to commonality); *Cahill*, 2018 WL 1791910, at *4 (same); *Haghayeghi v. Guess?, Inc.*, 168 F. Supp. 3d 1277, 1280 (S.D. Cal. 2016) ("Here, the information can be used toward discovery of whether the putative class suffered the same alleged injury of receiving unauthorized text messages from Defendant, and thus would bear on issues of commonality and typicality."); *Gilman*, No. C11-0806-JCC, Order, Dkt. No. 67, at p.4 ("Plaintiff's requested discovery therefore appears likely to produce substantiation of the class allegations and is appropriate for that reason.").

Plaintiff's requests in this case—which are adapted from a set of discovery that has been used by Plaintiff's counsel in many TCPA cases—are substantially similar to the requests in the many other cases cited above. The Call List is relevant to establish, at a minimum, ascertainability, numerosity and commonality and can only be obtained from ARM.

### 4. The Call Data is Relevant to ARM's Affirmative Defense of Prior Express Consent.

The Call Data is relevant to ARM's potential affirmative defense of prior express consent. Prior express consent is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim. *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2014 WL 4715732, at *1 (W.D. Wash. Sept. 22, 2014); *Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *4 (N.D. Ill. Jun. 1, 2017) (citation omitted); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 30 F.C.C.R. 7961 (F.C.C. 2015) ("2015 FCC Ruling"), at ¶ 47.

Here, ARM has refused to stipulate it has no prior express consent defense and has even taken the position in pleadings that it obtained prior express consent to call Plaintiff and the Class. According to ARM, it intends to argue that the question of whether class members provided prior express consent is an individualized determination that results in individual issues predominating over class-wide issues and/or results in the class action device not being superior to individual cases. The Call Data, which pertains to ARM's potential affirmative defense of prior express consent, is therefore relevant to establish, at a minimum, commonality, predominance and superiority and can only be obtained from ARM. Yet, ARM appears to take the position that such information should not have to be provided until *after* a ruling on class certification. In *Gilman*, also a putative TCPA class action case, Judge Coughenour rejected a defendant's similar attempt to oppose class certification and at the same time deny plaintiff the call data discovery needed for class certification stating: "[c]lass certification cannot fairly be evaluated without information on whether others received automated calls to which they did not expressly consent, and Plaintiffs have no way to gather this information aside from the discovery requests [defendant] opposes." *Gilman*, No. C11-0806-JCC, Order, Dkt. No. 67, at p. 4. Accordingly, the court ordered the defendant to produce the requested information.

The same result was reached in *Whiteamaire*, another putative TCPA class action case, where the court rejected defendant's argument that "the call data not necessary to determine whether a class should be certified" and allowed plaintiff to obtain the call data stating "the information plaintiff seeks…is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality." 2013 WL 5348377, at *3.

Likewise, in *Martin*, another TCPA class action, the defendant argued that it planned to raise a "prior express consent" affirmative defense, but "objected to turning over documents

7

pertaining to this defense." *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). In response, the court noted:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Id.* Accordingly, the court rejected all burden arguments and "reject[ed] [the defendant's] argument that this discovery should be postponed until after the disposition of the class certification motion." *Id.* at *4.

Therefore, to the extent that ARM intends to mount a prior express consent defense in opposition to class certification, ARM must produce all records regarding that argument to Plaintiff. *See Martin*, 2011 WL 2311869, at *4; *see also Thrasher v CMRE Financial Services, Inc.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (ordering production of outbound call lists and information pertaining to the defense's affirmative defense of prior consent); *City Select*, 867 F.3d at 440-41 (reversing district court's order denying class certification for failure to compel production of class-wide call data; "plaintiff was denied the opportunity to demonstrate whether a reliable, administratively feasible method of ascertaining the class exits"). If ARM does not produce the Call Data, it should withdraw the defense. *See Martin*, 2011 WL 2311869, at *4. ARM can either produce information that purportedly supports its untenable prior express consent argument or withdraw the argument. It cannot have it both ways.

### C. Defendant Fails to Carry Its Burden for Issuance of a Protective Order.

Having established that production of a Call List and Call Data is 'standard practice' in TCPA litigation, Defendant's Motion fails to carry *its* burden as to why a protective order should issue as to the discovery requests for relevant class-wide data.

The Federal Rules state that before a protective order may issue, the movant must show

good cause why justice requires an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed.R.Civ.P. 26(c) (2008). To make a showing of good cause, the movant has the burden of showing the injury "with specificity." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) quoting *Pearson v. Miller,* 211 F.3d 57, 72 (3d Cir.2000). "In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection."  *Id*. (citations omitted).   "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See Id.* (citations omitted).  Moreover, the alleged harm must be significant, not a mere trifle.  *Id*. (citations omitted).

Here, the *only* 'burden' Defendant has articulated as to why a protective order should issue is the supposed burden involved in reviewing and producing the Call Data at issue, which Defendant contends encompasses approximately 1.5 million accounts.  Doc. 31.  Defendant, however, sets up a strawman argument because Plaintiff's requests ask no such thing of Defendant. Rather, Defendant merely needs to produce the Call List and Call Data to Plaintiff and Plaintiff will undertake this burden – not Defendant.[2]   In any event, this discovery is proportional to the needs of the case—**a class action**—as Plaintiff alleges Defendant makes millions of illegal robocalls to thousands of consumers and Defendant concedes there are at least 1.5 million accounts at issue. Doc. 26 at 2; *see also Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV, 2017 WL 5196093, at *5 (S.D. Fla. Nov. 9, 2017) ("The Court acknowledges ERC's position that this

---

[2] Defendant also appears to raise privacy objections to production of the Call List and Call Data.  However, such concerns lack merit.  with respect to privacy concerns, Defendant does not even bother to explain how the information that is sought—telephone numbers, call logs, and related account information—"constitutes protected heath information." Doc. 26 at 2. No matter, a Protective Order has already been entered in this case that will protect any personal and private information disclosed during course of discovery.  *See Harmening-Marl, v. Quest Diagnostics, Inc*., No. 3:17-CV-1197-J-39JRK, 2018 WL 7436515, at *1 (M.D. Fla. June 1, 2018) (noting that a protective order is sufficient to protect HIPAA information).

Order could potentially require ERC to turn over information describing millions of calls…the request is proportional to the needs of the case").

Ironically, Defendant's arguments against producing this information demonstrate the very reasons why it *must* be produced. Defendant contends it "cannot produce dialer call logs or limit production to accounts with **cellular telephones**." Doc. 31 at 2 (emphasis added). Because Defendant cannot determine which calls were placed to cellular telephones—an element of Plaintiff's claims—it is necessary that Defendant produce all of the calls over the last 4 years so that Plaintiff's expert can analyze the calls and determine which ones were placed to cellular phones. For the same reasons, Plaintiff requires the Call List and Call Data so that Plaintiff's expert can determine which calls were placed to "reassigned numbers" so that Plaintiff can identify the potential class members. Such an analyses is necessary for class certification purposes because it is relevant to issues such as numerosity, commonality and predominance. *See supra* at 2-8.

The only other supposed justification Defendant offers for denying Plaintiff relevant class-wide discovery is the unfounded claim that Plaintiff will use this information to contact new class members and bring new claims. However, Plaintiff **will** stipulate that she will not use the information for these purposes. Indeed, she only seeks this information so that her expert may analyze it and prepare a report so that Plaintiff may meet her burden on class certification.

Accordingly, Defendant fails to carry its burden for issuance of a protective order.

## IV.     CONCLUSION

For the reasons discussed herein, and the reasons discussed in Plaintiff's fully-briefed Motion to Compel (Docs. 21, 26-27), Defendant's duplicative Motion should be denied in its entirety. In addition, Plaintiff requests that this Court award her attorneys' fees and costs incurred in opposing this duplicative and wasteful motion.

Dated: July 8, 2019

Respectfully submitted,

**GINA BELLENGER**

 /s/ *Andrew Shamis*
Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com
Florida Bar # 101754

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

**THE LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
Jibrael S. Hindi, Esq.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
jibrael@jibraellaw.com

*Attorneys for Plaintiff and the Proposed Classes*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **July 8, 2019**, via the Clerk of Court's CM/ECF system which will provide electronic notice to all attorneys of record.

                */s/ Andrew J. Shamis*
                Florida Bar No. 101754
                Email:efilings@shamisgentile.com
                Telephone: 305-479-2299
                Facsimile:  786-623-0915

                *Counsel for Plaintiff and the Class*