**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.: 0:19-cv-60205-DIMITROULEAS/Snow

GINA BELLENGER, on behalf of
herself and all others similarly situated,

        Plaintiff,

v.

ACCOUNTS RECEIVABLE MANAGEMENT, INC.,

        Defendant.
_____/

**CLASS COUNSEL'S *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD, AND MEMORANDUM IN SUPPORT**

    Plaintiff Gina Bellenger ("Plaintiff") sued Accounts Receivable Management, Inc., ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") alleging that she and members of the Class received autodialed calls from Defendant without prior express consent, which allegedly harmed her and the Class. Defendant denies any wrongdoing and raised various challenges to class certification and the merits of Plaintiff's claim. The parties negotiated a settlement on behalf of plaintiff and a class of approximately 3,000 consumers who received phone calls from Defendant. On October 1, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of Class Counsel's application for an award of attorneys' fees and expenses and a motion for Final Approval. By their Motion, Class Counsel now seek approval of a Service Award for the Class Representative and attorneys' fees for Class Counsel and reimbursement of certain expenses incurred in prosecuting this Action.

**I.    INTRODUCTION**

    The TCPA, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing

calls…."[1] In furtherance of Defendant's business of attempting to collect debts from consumers, Defendant initiated a calling campaign in which debt collection calls were placed to Plaintiff and approximately 3,000 other individuals. Plaintiff alleged that this campaign violated the TCPA because the calls were placed to an identifiable group of consumers using an automatic telephone dialing system without prior express consent.

The parties participated in full-day mediation with Steven R. Jaffe, a well-respected mediator in South Florida. On that day, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The settlement required Defendant to make available $425,000.00 for the benefit of settlement class members.  *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as *Exhibit A*.[2]

## II. APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REQUEST FOR CLASS REPRESENTATIVE AWARD

### A. Procedural History

On January 23, 2019, Plaintiff initiated this litigation against Defendant in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. Defendant filed an Answer and Affirmative Defenses on February 20, 2019. [DE #5].

On March 12, 2019, after conducting a telephonic meet and confer the Parties submitted a Joint Scheduling Report. [DE #8].

Discovery commenced in March 2019. Class Counsel served written discovery and documents requests.

On May 21, 2019, after numerous attempts to resolve discovery disputes by Plaintiff and Defendant, Plaintiff filed her Motion to Compel Discovery Responses and Memorandum of Law. [D.E. 21]. Plaintiff prevailed on her Motion to Compel. [D.E. 34].

On June 6, 2019, Plaintiff filed a Joint Motion to Extend Deadline to file Motion for Class Certification. [DE 24].

On June 7, 2019, the Court entered its Order Extending Deadline to File Motion for Class Certification to September 16, 2019. [DE 25].

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

[2] All capitalized terms used herein have the same meanings as those defined in the Agreement.

On September 5, 2019, the Parties mediated in Miami, FL with mediator Steven R. Jaffe. Prior to mediation, the Parties submitted detailed mediation briefs discussing the strengths and weaknesses of their respective claims. Only after a full day of mediation, did the Parties reach an agreement to settle the Action, and execute a term sheet memorializing their understanding. On September 13, 2019, the Parties filed a Notice of Settlement with the Court [DE #35]. Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

### B.     Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### 1.     The Settlement Class

The Settlement Class is a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All individuals within the United States (i) who received a call (ii) on his or her cellular telephone (iii) from Defendant, (iv) without their prior express consent.

Persons meeting this definition are referred to collectively as the "Settlement Class" and, individually, as "Settlement Class Members." Agreement p. 10. The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

#### 2.     Settlement Consideration

Pursuant to the Settlement, Defendant, has agreed to make available $425,000.00 to the benefit of Settlement Class Members.

#### 3.     The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or

"opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement p. 13-22.

The Notice Program informed Settlement Class members of the substantive terms of the Settlement. It was designed to advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program was designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process.

### 4. Service Award

Pursuant to the Settlement, Class Counsel is entitled to request, and Defendant agreed it would not oppose, a Service Award up to $4,000.00 for the Class Representative, Gina Bellenger. Agreement p. 13. The Service Award will compensate Class Representative for her time and effort in the Action, including producing documents and sitting for a deposition, and for the risks she undertook in prosecuting the Action against Defendant.

### 5. Attorneys' Fees and Costs

Per the terms of the Settlement Agreement, Class Counsel was entitled to request, and Defendant agreed it would not oppose, attorneys' fees, litigation costs, and expenses of up to 33.33% of the Settlement Fund. Agreement p. 13. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. *See* Declaration of Scott Edelsberg ¶ 2, attached as *Exhibit B* ("Edelsberg Decl.").

### III. APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $4,000.00. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the

interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information to Defendant's formal discovery requests. Edelsberg Decl. ¶ 3. Plaintiff was prepared to be available for trial, if necessary. *Id.* at ¶ 19.

The Service Award of $4,000.00 is less than 1% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *Id.* at ¶ 20. The Service Award requested here is reasonable.

**IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an all-inclusive award of attorneys' fees and expenses equal to 33.33%, i.e., $141,666.66, of the Settlement Fund. Edelsberg Decl. ¶ 5. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id.* at ¶ 3. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that their all-inclusive request for fees and expenses is appropriate, fair and reasonable and respectfully request that it be approved by the Court.

    **A.    <u>The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.</u>**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D.

5

Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common- fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the clients or the circumstances;

(8) the results obtained, including the amount recovered for the Clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1. The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Edelsberg Decl. ¶ 6. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 23. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 24. Time and resources were also dedicated to conducting formal and informal discovery and synthesizing thousands of pages of data. *Id.* at ¶ 25.

Settlement negotiations consumed further time and resources. *Id.* at ¶ 26. The initial mediation session required substantial preparation and document review. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. All of this work consumed a substantial amount of time.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* at ¶ 27. The time and resources devoted to this Action readily justify the requested fee.

### 2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal

skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Edelsberg Decl. ¶ 7.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries. Edelsberg Decl. ¶ 8; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment. Agreement ¶ 56. Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id.* at ¶ 57.

### 4. The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks. Edelsberg Decl. ¶ 10. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by

the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Edelsberg Decl. ¶ 11. Defendant was confident in their opposition to Plaintiff's class certification argument and was likely intending on moving for summary judgment. *See* Section D.2.d., *supra* (Plaintiff's summary of Defendant's numerous defenses). The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Edelsberg Decl. ¶ 12.

### 5. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 13. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Edelsberg Decl. ¶ 14. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. *Id.* at ¶ 14. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6. The Requested Fee and Expenses Comport with Awards in Similar Cases.

Counsel's all-inclusive request for fees and costs totaling 33.33% of the Settlement Fund is well within the range, perhaps even lower given that it includes costs as well, of awards in similar cases. *Id.* at ¶ 37. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I*. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03- 22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, Class Counsel's request for fees and expenses, which is within the range, or perhaps even below, of the cases cited about, is appropriate and should be awarded.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) appoint Gina Bellenger as Class Representative; (2) approve the requested Service Award in the amount of $4,000.00; and (3) award Class Counsel attorneys' fees and expenses in the amount of $141,666.66, or 33.33%, of the Settlement Fund; Counsel for Defendant has no opposition to this motion.

Dated: December 2, 2019

Respectfully submitted,

 /s/ *Andrew Shamis*
Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com
Florida Bar # 101754

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg
Florida Bar No. 100537
19495 Biscayne Blvd. #607
Aventura, FL 33180
Email: scott@edelsberglaw.com

**THE LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
Jibrael S. Hindi, Esq.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
jibrael@jibraellaw.com

*Attorneys for Plaintiff and the Class*