## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No.: 0:19-cv-60205-DIMITROULEAS/SNOW

GINA BELLENGER, on behalf of
herself and all others similarly situated,

        Plaintiff,

v.

ACCOUNTS RECEIVABLE MANAGEMENT, INC.,

        Defendant.
_____/

**PLAINTIFF'S AND CLASS COUNSELS' UNOPPOSED MOTION FOR FINAL APPROVAL**

    Plaintiff GINA BELLENGER ("Plaintiff") sued ACCOUNTS RECEIVABLE MANAGEMENT, INC., ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") alleging that she and members of the class received autodialed calls from Defendant without prior express consent, which allegedly harmed her and the class. Defendant denies any wrongdoing and raises various challenges to class certification and the merits of Plaintiff's claim.  The parties negotiated a settlement on behalf of plaintiff and a class of approximately 3,000 consumers who received phone calls from Defendant. On October 1, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement.

**I.    INTRODUCTION**

    The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[1] In furtherance of Defendant's business of attempting to collect debts from consumers, Defendant initiated a calling campaign in

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

which debt collection calls were placed to Plaintiff and approximately 3,000 other individuals. Plaintiff alleged that this campaign violated the TCPA because the calls were placed to an identifiable group of consumers using an automatic telephone dialing system without prior express consent.

The parties participated in full-day mediation with Steven R. Jaffe, a well-respected mediator in South Florida. On that day, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The settlement required Defendant to make available $425,000.00 for the benefit of settlement class members. *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as *Exhibit A*.[2]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in page 5-6 of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.   MOTION FOR FINAL APPROVAL

### A.   **Procedural History**

On January 23, 2019, Plaintiff initiated this litigation against Defendant in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. Defendant filed an Answer and Affirmative Defenses on February 20, 2019. [DE #5].

On March 12, 2019, after conducting a telephonic meet and confer the Parties submitted a Joint Scheduling Report. [DE #8].

Discovery commenced in March 2019. Class Counsel served written discovery and documents requests.

On May 21, 2019, after numerous attempts to resolve discovery disputes by Plaintiff and Defendant, Plaintiff filed her Motion to Compel Discovery Responses and Memorandum of Law. [D.E. 21].

On June 6, 2019, Plaintiff filed a Joint Motion to Extend Deadline to file Motion for Class

---

[2] All capitalized terms used herein have the same meanings as those defined in the Agreement.

Certification. [DE 24].

On June 7, 2019, the Court entered its Order Extending Deadline to File Motion for Class Certification to September 16, 2019. [DE 25].

On September 5, 2019, the Parties mediated in Miami, FL with mediator Steven R. Jaffe. After a full day of mediation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding. On September 13, 2019, the Parties filed a Notice of Settlement with the Court. [DE 35]. Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

On September 24, 2019, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement. [DE 38].

On October 1, 2019 the Court entered its Order Preliminarily Approving Class Action Settlement. [DE 39].

On December 2, 2019 Plaintiff filed her Unopposed Motion for Attorneys' Fees, Expenses, and Service Award. [D.E. 40].

On January 13, 2020, Magistrate Judge Lurana S. Snow issued her Report and Recommendation granting Plaintiff's request for attorneys' fees, expenses and service award. [D.E. 41].

### B.  **Summary of the Settlement Terms**

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### 1.  **The Settlement Class**

The Settlement Class is a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All individuals within the United States (i) who received a call (ii) on his or her cellular telephone (iii) from Defendant, (iv) without their prior express consent. Persons meeting this definition are referred to collectively as the "Settlement Class" and, individually, as "Settlement Class Members."

Agreement p. 10. The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member

who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### 2. Settlement Consideration

Pursuant to the Settlement, Defendant, has agreed to make available $425,000.00 to the benefit of Settlement Class Members.

### 3. The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice program was designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement p. 13-22.

The Notice Program informed Settlement Class members of the substantive terms of the Settlement. It was designed to advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program was designed to, and did in fact, reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process.

### 4. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. Settlement Class members will make a claim by submitting a valid Claim Form to the Settlement Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Declaration of Meagan Brunner (Exhibit B *infra*.) as Exhibit C. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he received a call or  text message; and (4) a current contact telephone number. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be

eligible to automatically receive payment. Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund Payment. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Claim Forms can be submitted until March 6, 2020.

### 5. Allocation of the Settlement Fund Payments

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a pro rata share from the Settlement Fund of up to $500.00 cash distribution payable by check less any Notice and Administration Costs, Attorneys' Fees, Expenses and Service Award. Settlement Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form within 60 days following the Effective Date. Agreement p. 11-12.

### 6. Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section V of the Agreement.

## C. Argument

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

### 1. Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.

Defendant had contact information for the vast majority of the Settlement Class. Therefore, the Notice Program consisted of: (1) direct mail postcard notice ("Mailed Notice") for all Settlement Class members (2) a "Long-Form" notice with more detail than the Mailed Notice,

5

which has been available on the Settlement Website and via mail upon request; and (4) a Settlement Website and Toll-Free Telephone Number. *See* Declaration of Meagan Brunner ¶¶ 3-7, attached as *Exhibit B* ("Brunner Decl.").

The Notice Administrator received data from Defendant that identified 2,950 unique phone numbers that received calls from Defendant. *Id.* at ¶ 2. The Notice Administrator also received the names and mailing addresses of each individual associated with each phone number provided by Defendant. *Id.* After taking into account duplicate addresses and phone numbers, screening the National Change of Address Database, and performing a reverse look-up for 20 phone numbers that did not contain mailing addresses, the Notice Administrator mailed 2,802 notices to Settlement Class members. *Id.* at ¶ 3.

The Notice Administrator also established the Settlement Website, www.ARMTCPASettlement.com, which went live on December 2, 2019. *Id.* at ¶ 6. Visitors of the website can download copies of the Long Form Notice, Settlement Agreement, Preliminary Approval Order, Claim Form, and other case-related documents. The Settlement Website also includes an online portal to file Claim Forms electronically. *Id.*

In addition, the Notice Administrator established and continues to maintain a toll-free interactive Voice Response Unit ("VRU") with the telephone number of 1-866-523-2949 for Settlement Class Members to call and obtain information about the Settlement, request a Long Form Notice and Claim Form, and/or seek assistance from a live operator during regular business hours. The telephone hotline became operational on December 2, 2019 and is accessible 9 a.m. to 8 p.m. Eastern Time. *Id.* at ¶ 7.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important

documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to 33% of the Settlement Fund, and a Service Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of February 12, 2020, the Settlement Administrator had received no requests for exclusions and ***no objections*** to the Settlement have been filed. *Brunner Decl.* ¶¶ 9-10.

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set

forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in formal mediation with Steven R. Jaffe. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to a Settlement Class comprised nearly 3,000 Settlement Class Members. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement,"*Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement

Class.

### c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive discovery with Defendant and third parties. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Class Counsel are confident in the strength of Plaintiff's case but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in trial and post-judgment appeal. Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate

proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, without further delay.

This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. Moreover, Plaintiff would have faced many obstacles in demonstrating that the software used by Defendant to transmit the subject text messages is considered an automatic telephone dialing system, as defined by the TCPA.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Class Counsel believes that Plaintiff had a strong case against Defendant.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

      **e.**  **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

The $425,000.00 settlement fund in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery for the

Settlement Class in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549, at *7 (N.D. Ill. 2016) (TCPA case providing for a $52.50 payout for each claimant); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

### f. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, as not a single objection was filed to date. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3. The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

11

For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 3,000 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is satisfied. There are multiple questions of law and fact – centering on Defendant's consent to contact members of the Settlement Class through debt collection calls – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received calls from Defendant and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who

have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class. Based on the foregoing, the Settlement is fair, adequate and reasonable.

## II.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit C*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Gina Bellenger as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in pages 5-6 of the Agreement; (5) approve the requested Service Award in the amount of $4,000.00; (6) award Class Counsel attorneys' fees in the amount of 33% of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendant has no opposition to this motion.

Dated: February 14, 2020

Respectfully submitted,

**GINA BELLENGER**

  /s/ *Andrew Shamis*
Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com
Florida Bar # 101754

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg
Florida Bar No. 100537
19495 Biscayne Blvd. #607
Aventura, FL 33180
Email: scott@edelsberglaw.com

**THE LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
Jibrael S. Hindi, Esq.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
jibrael@jibraellaw.com

*Attorneys for Plaintiff and the Class*